UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

FEDERAL TRADE COMMISSION,

                                    Plaintiff,

        v.                                              09-CV-6329T

PAUL NAVESTAD aka PAUL RICHARD individually      **DECISION**
and doing business as THE CASH GRANT INSTITUTE,   **and ORDER**
GLOBAL AD AGENCY, GLOBAL ADVERTISING AGENCY,
DOMAIN LEASING COMPANY and/or CASH GRANT SEARCH,
and CHINTANA MASPAKORN aka CHRISTINA MASPAKORN
individually and doing business as THE CASH
GRANT INSTITUTE, GLOBAL AD AGENCY, GLOBAL
ADVERTISING AGENCY, DOMAIN LEASING COMPANY
and/or CASH GRANT SEARCH,

                                    Defendants.
_____

## INTRODUCTION

        Plaintiff Federal Trade Commission ("FTC") brings this action
against the defendants alleging that they have violated the Federal
Trade Commission Act ("FTC Act" or the "Act") by engaging in
unlawful telemarketing and internet-marketing schemes.  Plaintiff
also alleges violations of the Telemarketing Sales Rule ("TSR")
promulgated under the Telemarketing and Consumer Fraud and Abuse
Prevention Act ("the Telemarketing Act").  Specifically, plaintiff
claims that the defendants have engaged in unfair and deceptive
practices by advertising the availability of  private and/or
governmental cash grants to individuals for almost any purpose, and
then charging fees for information related to the alleged grants.
According to the plaintiff, the cash grants are deceptively
advertised as being widely available and instantly or quickly
available to individuals, when in fact, such grants are not widely

available, often require extensive application processes, and take months to receive.

Plaintiff now moves for summary judgment against defendants Navestad and Maspakorn contending that there are no material facts in dispute, and that as a matter of law, the FTC is entitled to judgment in its favor. Specifically, <u>inter</u> <u>alia</u>, the FTC seeks an Order from this court: (1) permanently enjoining the defendants from marketing or selling credit related goods or services, (2) permanently enjoining the defendants from violating the telecommunications act or engaging in fraudulent marketing schemes; (3) awarding a Judgment in favor of the FTC against Navestad in the amount of $1,105,078.96 as disgorgement for Navestad's unjust enrichment; (4) awarding Judgment in favor of the FTC against Navestad in the amount of $20,000,000 in civil penalties for violations of the Telemarketing Act. Defendant Maskaporn has not opposed the plaintiff's motion. Defendant Navestad opposes the FTC's motion on grounds that there are numerous questions of fact in dispute, and therefore, summary judgment is inappropriate.

For the reasons set forth below, I find that there are no material issues of fact in dispute, and that the FTC has demonstrated as a matter of law that it is entitled to the relief it seeks. I therefore grant plaintiff's motion for summary judgment.

**DISCUSSION**

In June 2009, Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), filed a Complaint ("Complaint") pursuant to Sections 5(a), 5(m)(1)(A), 13(b), 16(a) and 19 of the FTC Act, 15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b), 56(a), and 57b, and Section 6 of the Telemarketing and Consumer Fraud and Abuse Prevention Act (the "Telemarketing Act"), 15 U.S.C. § 6105, seeking to obtain temporary, preliminary, permanent injunctive relief, civil penalties, disgorgement of allegedly ill-gotten monies, and other equitable relief, for the Defendants' alleged acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310.

According to the plaintiff, the defendants were engaged in an extensive and fraudulent telemarketing scheme in which they made more than 8 million automated telephone calls, also known as "robocalls" to telephone numbers in the United States in violation of federal Telemarketing Sales Rules. Generally, the calls invited recipients to visit websites where the visitors could learn about obtaining "cash grants" from federal, state, and local governments, private foundations, and "wealthy individuals". Both the phone calls and the websites represented that cash grants were available for almost any purpose, including paying off personal debt, were simple to obtain, could be obtained very quickly, and that the recipient of the call was already qualified to obtain the grants.

Upon visiting one of the defendants' websites, the consumer would be directed to yet another website that would charge a fee for providing information about cash grants from public or private sources. The defendants received fees for referring consumers to the fee-charging websites. The fee-charging websites did not provide grants to any consumers, and unlike the defendants' phone calls and websites, disclosed that it was very difficult to obtain cash grants from public or private sources, that very few people qualified for such grants, and that obtaining a grant generally involved a lengthy, competitive application process. In addition to providing consumers with false and misleading information, the defendants also allegedly made more than 2.7 million calls to consumers who were on the national "do not call" registry. The defendants calls also failed to connect consumers to a live operator, if so requested by the consumer, within two seconds, as required by law.

Defendants Navestad and Maspakorn have each invoked their rights under the Fifth Amendment to the United States Constitution to not incriminate themselves by responding to plaintiff's interrogatories, requests for admissions, and discovery demands including requests to take testimony from the defendants. Nevertheless, Navestad opposes the plaintiff's motion for summary judgment on grounds that the plaintiff has failed to establish that he was responsible for the alleged illegal activity. Specifically,

Navestad alleges that he was merely a consultant for the companies that engaged in the alleged wrongdoings.  Navestad alleges that there are several material questions of fact in dispute, and that the evidence submitted by the plaintiff fails to establish violations of the FTC Act, the Telecommunications Act or rules promulgated thereunder.

    I.    <u>Standard Of Review</u>

    A.    <u>Summary Judgment Standard</u>

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  When considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the party against whom summary judgment is sought.  <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007). If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate.  <u>Scott</u>, 550 U.S. at 380 (citing <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-587 (1986)).

B.  Defendant Navestad's invocation of his Fifth Amendment Privilege.

Defendant Navestad has refused to answer the plaintiff's interrogatories, requests for admission, and has refused to be deposed by invoking his Fifth Amendment right to be free from self incrimination. As a result, the FTC argues that the court may draw a negative inference from the defendant's refusal to answer specific interrogatories or requests for admission.

While a party may properly assert his or her Fifth Amendment right to be free from self incrimination, the assertion of that right is not without consequence.  If the party asserting the right is unable to produce evidence to counter the opposing party's evidence, "the claim of privilege will not prevent an adverse finding or even summary judgment" against that party.  United States v. Certain Real Property and Premises Known as: 4003–4005 5th Ave., Brooklyn, N.Y., 55 F.3d 78, 83 (2d Cir.1995).  However, a party's inability to produce contrary or exculpatory evidence will not, in and of itself, warrant a finding against the party asserting the privilege.  Rather, just as in cases where the privilege is not asserted, the party seeking judgment in its favor must prove, by the applicable quantum of evidence, that it is entitled to relief.  As the Supreme Court stated in United States v. Rylander, 460 U.S. 752, 758, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983), "while the assertion of the Fifth Amendment privilege against compulsory self-incrimination may be a valid ground upon

Page -6-

which a witness ... declines to answer questions, it has never been thought to be in itself a substitute for evidence that would assist in meeting a burden of production."

The FTC contends that this court may draw a negative inference from Navestad's assertion of his Fifth Amendment rights.  While it is "settled law that a trier of fact may draw an adverse inference in a civil action against a party who invokes the Fifth Amendment privilege, application of such a rule in the context of a summary judgment motion presents a potential conflict, as courts considering such motions are "admonished to construe all evidence, including the defendants' silence, in a light most favorable to the nonmoving party." Fidelity Funding of Cal., Inc. v. Reinhold, 79 F.Supp.2d 110, 116-117 (E.D.N.Y.1997). See also In re Jacobs, 394 B.R. 646, 663-664 (Bkrtcy. E.D.N.Y., 2008)(acknowledging that at the summary judgment stage, "several courts" have declined to draw a negative inference based on a party's invocation of Fifth Amendment rights.)

In the instant case, I find that the court need not draw a negative inference from either Navestad or Maspakorn's silence. The FTC, in making its case for the granting of its motions for summary judgment, has submitted copious amounts of evidence supporting each and every element of its claims.  Indeed, in many instances, the FTC has supported its assertions with several evidentiary sources, including witness statements, correspondence,

and business records such as contracts and financial statements.[1]
The defendants, through their silence, have failed to rebut the
evidence, and because the FTC has affirmatively demonstrated
through evidence that it is entitled to the relief it seeks, the
court need not rely on any negative inference from the defendants'
assertion of their Fifth Amendment rights to establish that the FTC
is entitled to relief.[2]   In short, the thorough and detailed

---

[1] In apparent recognition of its difficult burden of proving
a case in which the defendants have refrained from participating
in discovery due to Fifth Amendment concerns, the FTC has created
an extensive record comprised of, _inter alia_, bank records,
contracts, witness statements, depositions correspondence, and
photographs.  Plaintiff has submitted over 120 exhibits in
connection with its motion for summary judgment, and over 30
exhibits in support of their motions for injunctive relief.  Many
of the exhibits are multi-page documents, and upon submission to
the court, required over a dozen large binders to hold them.
When considered in conjunction with the plaintiff's briefs,
plaintiff has submitted thousands of pages of argument and
evidence in support of its claims that the defendants violated
the FTC and Telemarketing Acts.

[2] While Navestad and his attorney have submitted affidavits
and declarations in opposition to the plaintiff's motion for
summary judgment, I note that the attorney declarations are not
made upon personal knowledge, and therefore of no evidentiary
weight in opposition to the facts asserted by the plaintiff.
With respect to Navestad's declarations, Navestad has chosen not
to be deposed by the plaintiff, and thus plaintiff has had no
opportunity to question Navestad regarding the content of his
statements.  Moreover, Navestad has asserted his Fifth Amendment
rights in refusing to answer the plaintiff's interrogatories,
discovery requests, and requests for admission.  The Court will
not allow Navestad to benefit from refusing to engage in
discovery by allowing him to advance factual statements that have
not and can not be tested by the plaintiff.  Accordingly,
Navestad's factual assertions are given no weight.

evidence submitted by the FTC establishes that it is entitled to summary judgment

II.  <u>Plaintiff has established violations of the FTC Act</u>.

Section 5(a) of the FTC Act prohibits "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a). "To prove a deceptive act or practice in violation of Section 5(a) of the FTC Act, the FTC must show: (1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances, and that (3) the representation, omission, or practice is material." <u>F.T.C. v. Cantkier</u>, 767 F.Supp.2d 147, 151-52 (D.D.C., 2011).  "A representation is material if it 'involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.'" <u>F.T.C. v. Cantkier</u>, 767 F.Supp.2d at 151 (<u>quoting</u> <u>F.T.C. v. Cyberspace.Com LLC</u>, 453 F.3d 1196, 1199 (9th Cir.2006) ).

In the instant case, the FTC has established through the unrebutted evidence submitted to the court that the defendants, through their recorded robocalls and statements made on their websites, made material representations regarding governmental and private grant opportunities that were likely to mislead consumers. Specifically, the defendants, in their automated telephone calls, informed consumers that they were already qualified to receive cash grants from the public or private agencies.  Moreover, the robocalls informed consumers that they were qualified to receive

government payments for the purpose of reducing their debt.  The FTC has established that these claims were material, were false and deceptive, and were made for the purpose of misleading consumers. Because I find that the evidence submitted by the FTC establishes that the defendants made material false and deceptive statements for purpose of deceiving consumers, I find that the FTC is entitled to summary judgment in its favor with respect to its claims that the defendants have violated the FTC Act.

    III.  <u>Plaintiff has established violations of the TSR</u>.

    The Telemarketing Sales Rule is a regulation promulgated by the FTC pursuant to the Telemarketing Act.  Among other things, the TSR created the national "do not call" registry which allows consumers to opt out of receiving unwanted marketing calls. Persons who make soliciting calls to phone numbers registered on the "do not call" list may be subject to fines of up to $11,000 per call.  The TSR requires telemarketers to pay a fee to access the "do not call" registry, and to not make calls to phone numbers contained in the registry.  Additionally, the TSR requires telemarketers who make unsolicited sales calls to give the recipient of a call the opportunity to speak to a live operator within 2 seconds of making a request to do, and to opt out of future calls.  The TSR further prohibits telemarketers from making false or misleading statements to induce a consumer to purchase goods or services.

The FTC has established through the evidence submitted to the court that the defendants have violated the TSR by: making calls to consumers who were registered on the "do not call" list; failing to pay the fee required to access the "do not call" registry; failing to provide an opt-out mechanism for consumers; failing to connect consumers to alive operator within two seconds of a request to do so; and making false statements to consumers in an effort to induce them to pay for services that would allegedly enable them to easily and quickly receive public or private grants.

With respect to calls to consumers on the "do not call list", the FTC has provided documentary and testimonial evidence that Navestad placed at least 2.734 million calls to consumers registered on that list.  The FTC has further provided evidence that the defendants failed to access the "do not call" registry by applying to do so and paying the applicable fee for each area code to which the defendants placed calls.  The unrebutted evidence further demonstrates that the phone calls placed by the defendants were recorded messages that did not provide consumers with a method for opting out of receiving the phone call, nor did the calls provide consumers with the ability to speak to a live representative.  As stated above, the FTC has established that claims made by the defendants in their recorded messages, that the recipients of the calls were already qualified to receive grants that could be used to pay off personal debt, were false, misleading, deceptive, and made with the intent of inducing the

consumers to pay for services that would allegedly allow them to receive cash grants from public or private sources.  Because the FTC has established the defendants' violations of the TSR, I grant plaintiff's motion for summary judgment.

### FINDINGS

Having determined that the plaintiff is entitled to Summary judgment on all counts of the Complaint, I hereby make the following findings and Orders:

1.    This Court has jurisdiction over the subject matter of this case and the parties pursuant to 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355, and 15 U.S.C. §§ 45(m)(1)(A), 53(b), 56(a) and 57b.  This action arises under 15 U.S.C.  § 45(a).

2.    Venue in this District is proper under 28 U.S.C. §§ 1391(b), 1391 (d), 1395 (a), and 15 U.S.C. § 53(b).

3.    The activities of Defendant Navestad, as alleged in the Complaint, are in or affecting commerce, as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

4.    The Complaint states a claim upon which relief may be granted under Sections 5(a), 5(m)(1)(A), 13(b), 16(a), and 19 of the FTC Act, 15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b), 56(a), 57b, and Section 6 of the Telemarketing Act, 15 U.S.C. § 6105.

5.    Entry of this Order is in the public interest.

### DEFINITIONS

For purposes of the remainder of this Decision and Order, the following definitions shall apply:

1.    "And" and "or" shall be understood to have both conjunctive and disjunctive meanings.

2.    "Asset" means any legal or equitable interest in, right to, or claim to, any real and personal property, including, but not limited to, chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail or other deliveries, shares or stock, securities, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), lists of consumer names, accounts, credits, premises, receivables, cash, trusts, including but not limited to asset protection trusts, and reserve funds or other accounts associated with any payments processed on behalf of any Defendant, including, but not limited to, such reserve funds held by a payment processor, credit card processor, or bank.

3.    "Assisting others" includes, but is not limited to:

(A)   performing customer service functions, including, but not limited to, receiving or responding to consumer complaints;

(B)   formulating or providing, or arranging for the formulation or provision of, any marketing material;

(C)   providing names of, or assisting in the generation of lists of, potential customers;

(D)   performing marketing or billing services of any kind, including but not limited to, creating, hosting, or maintaining websites, or recruiting affiliates;

(E)   providing customer relationship management services or products;

(F)   providing accounting or financial management services;

(G)   processing credit and debit card payments;

(H)   hiring employees;

(I)   paying, or authorizing the payment of, company expenses;

(J)   registering domain names;

(K)   opening or managing mailbox accounts;

(L)   acting or serving as a consultant or independent contractor of any entity.

4.   "Credit - related goods or services" shall mean any business activity that purports directly or indirectly to: (1) provide consumers, arrange for consumers to receive, or assist consumers in receiving loans, financing, credit or debit cards; (2) improve, or arrange to improve, any consumer's credit record, credit history, or credit rating; (3) provide advice or assistance to any consumer with regard to any activity or service the purpose of which is to improve a consumer's credit record, credit history, or credit rating; (4) provide consumers, arrange for consumers to receive, or assist consumers in receiving a loan or other extension of credit; (5) provide consumers, arrange for consumers to receive, or assist consumers in receiving, debt consolidation, debt relief, or other credit counseling; (6) provide consumers, arrange for consumers to receive, or assist consumers in receiving, credit monitoring.

5.   "Defendant Navestad" means Defendant Paul Navestad.

6.   "Defendants" means Defendant Paul Navestad and Defendant Chintana Maspakorn, individually, collectively, or in any combination.

7.   "Document" has the meaning set forth in Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, Internet sites, webpages, websites, electronic correspondence, including e-mail and instant messages, photographs, audio and video recordings, contracts, accounting data, advertisements (including, but not limited to,

advertisements placed on the World Wide Web), FTP Logs, Server Access Logs, USENET Newsgroup postings, World Wide Web pages, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, computer records, and other data compilations from which information can be obtained and translated.  A draft or non-identical copy is a separate document within the meaning of the term.

8.   "Grant" means any product or service referred to as a "grant," or an award of value or financial assistance.

9.   "Grant procurement goods or services" means any goods or services which are advertised, offered for sale, or sold to consumers as a method by which consumers may obtain, receive, apply for, or learn how to obtain, receive, or apply for a Grant, disbursement, subsidy, stimulus, or any other kind of financial assistance, including, but not limited to grant procurement brochures, CDs, videotapes, DVDs, and websites.

10.  "Including" means "including without limitation."

11.  "Person" means a natural person, organization, or other legal entity, including a corporation, partnership, proprietorship, association, cooperative, or any other group or combination acting as an entity.

12.  "Representatives" shall have the same scope as Federal Rule of Civil Procedure 65(d)(2), and means Defendants' agents, servants, employees, and attorneys, and any other Person or entity in active concert or participation with them who receives actual notice of this Order by personal service or otherwise.

13.  "Telemarketing Sales Rule," or "TSR," means the FTC Rule entitled "Telemarketing Sales Rule," 16 C.F.R. § 310.

<u>**ORDER WITH RESPECT TO PAUL NAVESTAD**</u>

**I.  BAN RELATING TO ADVERTISING, MARKETING, PROMOTING, OFFERING FOR SALE, SELLING, OR PROMISING OF GRANTS OR GRANT PROCUREMENT GOODS OR SERVICES**

IT IS HEREBY ORDERED that Defendant Navestad, whether acting directly or through any other Person, corporation, partnership, subsidiary, division, agent, or other device, is permanently restrained and enjoined from engaging, participating, or assisting others in marketing, promoting, generating leads, advertising, offering for sale, or selling grants or grant procurement goods or services.

**II.  BAN ON MARKETING OR SALE OF CREDIT-RELATED PRODUCTS**

IT IS FURTHER ORDERED that Defendant Navestad, whether acting directly or through any other Person, corporation, partnership, subsidiary, division, agent, or other device, is permanently restrained and enjoined from engaging, participating, or assisting others in marketing, promoting, generating leads, advertising, offering for sale, or selling credit-related products.

**III. INJUNCTION AGAINST VIOLATING THE TELEMARKETING SALES RULE**

IT IS HEREBY ORDERED that Defendant Navestad and his Representatives whether acting directly or through any other Person, corporation, partnership, subsidiary, division, agent, or other device, are permanently restrained and enjoined from violating the Telemarketing Sales Rule, 16 C.F.R. Part 310, including, but not limited to:

A. Engaging in or initiating an outbound telephone call to a person's telephone number on the National Do Not Call Registry in violation of 16 C.F.R. § 310.4(b)(1)(iii)(B);

B. Initiating, or causing others to initiate, an outbound telephone call to a telephone number with a given area code without the Defendants, either directly or through another person, first paying the required annual fee for access to the telephone numbers, within that area code, that are on the National Do Not Call Registry, in violation of 16 C.F.R. § 310.8;

C. Abandoning, or causing others to abandon an outbound telephone call by failing to connect the call to a sales representative within two (2) seconds of the completed greeting of the person answering the call, in violation of 16 C.F.R. § 310.4(b)(1)(iv);

D. Initiating an outbound telemarketing call or engaging in an internal or external upsell that does not promptly provide the disclosures required by § 310.4(d) of the TSR;

E. Initiating any outbound telephone call that delivers a pre-recorded message, other than a pre-recorded message permitted for compliance with the call-abandonment safe harbor in § 310.4(b)(4)(iii), unless the requirements in § 310.4(b)(1)(v)(A)(I)-(iv) are met, including the seller obtaining an express written agreement evidencing the willingness of the recipient of the call to receive calls that deliver pre-recorded messages on behalf of a specific seller;

F. Initiating any outbound telephone call that delivers a prerecorded message, other than a prerecorded message permitted for compliance with the call abandonment safe harbor in §310.4(b)(4)(iii) unless the requirements of §§ 310.4(b)(1)(v)(A) and 310.4(b)(1)(v)(B) are met;

G.   In the event that the Commission amends the
     Telemarketing Sales Rule, in whole or in part,
     Defendant shall comply fully and completely
     with all applicable provisions of the Amended
     Rule, on or after the date of any such
     amendment.

## IV. INJUNCTION AGAINST MISREPRESENTATIONS

IT IS FURTHER ORDERED that Defendant Navestad and his
Representatives whether acting directly or through any other
Person, corporation, partnership, subsidiary, division, agent or
other device, in connection with the advertising, marketing,
promotion, offering for sale, or sale of any good or service, are
permanently restrained and enjoined from making or assisting others
in the making of, expressly or by implication, any false or
misleading statement or representation of material fact, including
but not limited to:

A.   The income a consumer can earn;

B.   The amount or type of resources or labor
     required to make money;

C.   Affiliation with, endorsement or approval by,
     or other connection to any other Person,
     business, government entity, or program;

D.   The total costs to purchase, receive, or use,
     and the quantity provided;

E.   Any material restriction, limitation, or
     condition to purchase, receive, or use;

F.   Any material aspect of the nature or terms of
     any refund, cancellation, exchange, or
     repurchase policy, including, but not limited
     to, the likelihood of a consumer obtaining a
     full or partial refund, or the circumstances

in which a full or partial refund will be granted to the consumer; and

G.   Any material aspect of the performance, efficacy, nature or other characteristic.

## V.   INJUNCTION AGAINST USING OR MAINTAINING CONSUMER INFORMATION

IT IS FURTHER ORDERED that Defendant Navestad and his Representatives whether acting directly or through any other Person, corporation, partnership, subsidiary, division, agent, or other device, are hereby permanently restrained and enjoined from:

A.   Selling, renting, leasing, transferring, or otherwise disclosing, using, or benefitting from consumer (including customers and prospective customers) information, including the name, address, telephone number, email address, social security number, place of employment, financial need, other identifying information, or any data that enables access to a consumer's account (including a credit card, bank account, or other financial account) of any person that was obtained by any of the Defendants in connection with the marketing or sale of any product or service at any time prior to the date this Order was entered;

B.   Failing to dispose of such consumer (including customers and prospective customers) information in all forms in his possession, custody, or control within thirty (30) days after entry of this Order; and Disposal shall be by means that protect against unauthorized access to the customer information, such as by burning, pulverizing, or shredding any papers, and by erasing or destroying any electronic media, to ensure that the customer information cannot practicably be read or reconstructed. Provided, however, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency

or required by a law, regulation, or court
order.

### VI.  MONETARY RELIEF

The FTC seeks both disgorgement and civil penalties as remedies
for the defendants violations of the FTC and Telemarketing Acts.
As stated above, I find that the plaintiff has established
violations of the acts, and thus remedies of injunctive relief and
damages are appropriate.  With respect to monetary relief, it is
well settled that disgorgement is an appropriate remedy under the
FTC Act.  <u>FTC v. QT, Inc.</u>, 512 F.3d 858, 863 (7th Cir. 2008).
Moreover, it is undisputed that the FTC is empowered to recover
civil penalties from a defendant who violates the TSR where the FTC
has established that the defendant knowingly engaged in deceptive
acts that violated the TSR.  <u>See</u> 15 U.S.C. § 45(m)(1)(A).  In the
instant case, plaintiff has established that the defendants
knowingly engaged in deceptive acts, and knowingly violated the TSR
by engaging in those acts.  Additionally, the FTC has established
through the unrebutted evidence it has submitted that it is
entitled to the amounts sought from the defendants for disgorgement
and civil penalties.  Therefore:

IT IS FURTHER ORDERED that:

A.    Judgment is hereby entered in favor of the
      Commission and against Defendant Navestad in
      the amount of $1,105,078.96 as disgorgement
      for unjust enrichment arising from violations
      of Section 5 of the FTC Act, 15 U.S.C. § 45,
      as alleged in Counts VI and VII of Plaintiff's
      Complaint.

B.      Judgment is hereby entered in favor of the Commission and against Defendant Navestad in the amount of $20,000,000 in civil penalties for violations of the Telemarketing Act, 15 U.S.C. § 6105, as alleged in Counts I-V of Plaintiff's Complaint.

C.      Within ten (10) business days after execution of this Order by Defendant Navestad, the Defendant will transfer funds in the amounts specified in Sections VI(A) and (B) of this Order to the court registry for the U.S. District Court for the Western District of New York or to the court-appointed receiver, where the funds will be held until the Court's entry of the Order, at which time all funds will be transferred to the FTC and the United States Treasury pursuant to Sections VI (E) and (F) of this Order.

D.      In the event of any default by Defendant Navestad in satisfying any of his obligations under this Order, the entire amount of the judgments, less any amounts previously paid pursuant to this Order, together with interest, shall immediately become due and payable, and the Commission shall be entitled to pursue any and all other remedies available to it at law or equity.  Further, interest, computed pursuant to 28 U.S.C. § 1961(a), shall accrue from the date of default to the date of payment.  Defendant Navestad shall be liable for all payments required by this Order and any interest on such payments.

E.      All funds (or assets) paid pursuant to Section VI (A) of this Order shall be deposited into a fund administered by the Commission or its agents to be used for equitable relief, including, but not limited to, redress to consumers, and any attendant expenses for the administration of such equitable relief.  In the event that redress to consumers is wholly or partially impracticable or funds remain after the redress is completed, the Commission may apply any remaining funds or assets for such other equitable relief (including

consumer information remedies) as it determines to be reasonably related to Defendant Navestad's practices alleged in the Complaint. Any funds or assets not used for such equitable relief shall be deposited to the United States Treasury as disgorgement. Defendant Navestad shall have no right to challenge the Commission's choice of remedies under this Paragraph. Defendant Navestad shall have no right to contest the manner of distribution chosen by the Commission.

F.     All funds paid pursuant to Section VI (B) of this Order shall be deposited to the United States Treasury.

G.     Defendant Navestad relinquishes all dominion, control, and title to the funds paid to the fullest extent permitted by law. Defendant Navestad shall make no claim to or demand for return of the funds, directly or indirectly, through counsel or otherwise.

H.     In accordance with 31 U.S.C. § 7701, Defendant Navestad is hereby required, unless he has done so already, to furnish to the Commission his taxpayer identifying number and/or social security number, which shall be used for the purposes of collecting and reporting on any delinquent amount arising out of Defendant Navestad's relationship with the government.

## VII. LIMITED LIFTING OF ASSET FREEZE

IT IS FURTHER ORDERED that the freeze of Defendants' assets set forth in the Preliminary Injunction Order [ECF #17] entered by this Court on July 21, 2009, shall be lifted to the extent necessary to turn over the Defendants' assets as required by Section VI of this Order, and upon completion of the turn-over, shall be lifted permanently.

## VIII. ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Defendant Navestad obtain acknowledgments of receipt of this Order:

A.   Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.   For 10 years after entry of this Order, Defendant, for any business that Defendant is the majority owner or directly or indirectly controls, must deliver a copy of this Order to: (1) all principals, officers, directors, and managers; (2) all employees, agents, and representatives who participate in marketing, promoting, offering for sale, selling, or promising any product through the Internet or by telemarketing means, (3) all payment processors, list brokers, and lead generators used by this business; and (4) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within 7 days of entry of this Order for current personnel. To all others, delivery must occur before they assume their responsibilities.

C.   From each individual or entity to which Defendant delivered a copy of this Order, Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## IX.   COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Defendants make timely submissions to the Commission:

A.   180 days after entry of this Order, Defendant must submit a compliance report, sworn under penalty of perjury. Defendant must:

(1)   identify all telephone numbers and all email, Internet, physical, and postal addresses, including all residences;

(2) identify all titles and roles in all business activities, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and

(3) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership;

(4) designate at least one telephone number and an email, physical, and postal address as points of contact, which representatives of the FTC may use to communicate with Defendant;

(5) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses;

(6) describe the activities of each business, including the products and services offered, the means of advertising, marketing, and sales, and the involvement of Defendant Chintana Maspakorn, if any (which Defendant Navestad must describe if he knows or should know due to his own involvement);

(7) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and

(8) provide a copy of each Order Acknowledgment [and a copy of any bond] obtained pursuant to this Order, unless previously submitted to the Commission.

B. For 20 years following entry of this Order, Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.   Defendant must report any change in:

   (a)   name, including aliases or fictitious name, or residence address; or

   (b)   title or role in any business activity, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify its name, physical address, and Internet address, if any; (c) any designated point of contact; or (d) any entity that Defendant has any ownership interest in or directly or indirectly controls that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

C.   Defendant must submit to the FTC notice of the filing of any bankruptcy petition, insolvency proceeding, or any similar proceeding by or against Defendant within 14 days of its filing.

D.   Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 18 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.   Executed on:_____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.   Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal

Service) to: Associate Director for
Enforcement, Bureau of Consumer Protection,
Federal Trade Commission, 600 Pennsylvania
Avenue NW, Washington, DC 20580. The subject
line must begin: FTC v. Paul Navestad.

## X.   RECORD KEEPING

IT IS FURTHER ORDERED that Defendant must create certain

records for 20 years after entry of the Order, and to retain each

such record for 5 years. Specifically, for any business in which

Defendant, individually or collectively with Defendant Chintana

Maspakorn, is a majority owner or directly or indirectly controls,

Defendant must maintain the following records:

A.  Accounting records showing the revenues from
all goods or services (including charitable or
fund raising donations of any kind) sold, all
costs incurred in generating those revenues,
and the resulting net profit or loss;

B.  Personnel records showing, for each person
providing services, whether as an employee or
otherwise, that person's name, addresses, and
telephone numbers; job title or position;
dates of service; and, if applicable, the
reason for termination;

C.  Customer files obtained after entry of this
Order showing the names, addresses, telephone
numbers, dollar amounts paid, and the quantity
and description of goods or services purchased
or donations provided;

D.  Complaints and refund requests, whether
received directly or indirectly, such as
through a third party, and any response;

E.  All records necessary to demonstrate full
compliance with each provision of this Order,
including all submissions to the Commission;

F.    A copy of all advertisements, sales scripts, training materials, or other marketing materials, including, but not limited to, mailers, brochures, websites, flyers, and postcards; and

G.    A copy of all contracts with suppliers, payment processors, list brokers, and lead generators.

## XI.   COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendant's compliance with this Order, including any failure to transfer any assets as required by this Order:

A.    Within 14 days of receipt of a written request from a representative of the FTC, Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents, for inspection and copying.  The FTC is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.    For matters concerning this Order, the FTC is authorized to communicate directly with the Defendant.    Defendant must permit representatives of the FTC to interview any employee or other person affiliated with the Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C.    The FTC may use all other lawful means, including posing, through its representatives, as consumers, suppliers, or other individuals or entities, to Defendant or any individual or entity affiliated with the Defendant, without the necessity of identification or prior notice.    Nothing in this Order limits the

Commission's lawful use of compulsory process,
pursuant to Sections 9 and 20 of the FTC Act,
15 U.S.C. §§ 49, 57b-1.

## XII. RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

## ORDER WITH RESPECT TO CHINTANA MASPAKORN

### I.   BAN RELATING TO ADVERTISING, MARKETING, PROMOTING, OFFERING FOR SALE, SELLING, OR PROMISING OF GRANTS OR GRANT PROCUREMENT GOODS OR SERVICES

**IT IS HEREBY ORDERED** that Defendant Maspakorn, whether acting directly or through any other Person, corporation, partnership, subsidiary, division, agent, or other device, is permanently restrained and enjoined from engaging, participating, or assisting others in marketing, promoting, generating leads, advertising, offering for sale, or selling grants or grant procurement goods or services.

### II. BAN ON MARKETING OR SALE OF CREDIT-RELATED PRODUCTS

**IT IS FURTHER ORDERED** that Defendant Maspakorn, whether acting directly or through any other Person, corporation, partnership, subsidiary, division, agent, or other device, is

permanently restrained and enjoined from engaging, participating, or assisting others in marketing, promoting, generating leads, advertising, offering for sale, or selling credit-related products.

### III. INJUNCTION AGAINST VIOLATING THE TELEMARKETING SALES RULE

**IT IS HEREBY ORDERED** that Defendant Maspakorn and her Representatives whether acting directly or through any other Person, corporation, partnership, subsidiary, division, agent, or other device, are permanently restrained and enjoined from violating the Telemarketing Sales Rule, 16 C.F.R. Part 310, including, but not limited to:

    A.    Engaging in or initiating an outbound telephone call to a person's telephone number on the National Do Not Call Registry in violation of 16 C.F.R. § 310.4(b)(1)(iii)(B);

    B.    Initiating, or causing others to initiate, an outbound telephone call to a telephone number with a given area code without the Defendants, either directly or through another person, first paying the required annual fee for access to the telephone numbers, within that area code, that are on the National Do Not Call Registry, in violation of 16 C.F.R. § 310.8;

    C.    Abandoning, or causing others to abandon an outbound telephone call by failing to connect the call to a sales representative within two (2) seconds of the completed greeting of the person answering the call, in violation of 16 C.F.R. § 310.4(b)(1)(iv);

    D.    Initiating an outbound telemarketing call or engaging in an internal or external upsell

that does not promptly provide the disclosures required by § 310.4(d) of the TSR;

E.   Initiating any outbound telephone call that delivers a pre-recorded message, other than a pre-recorded message permitted for compliance with the call-abandonment safe harbor in § 310.4(b)(4)(iii), unless the requirements in § 310.4(b)(1)(v)(A)(I)-(iv) are met, including the seller obtaining an express written agreement evidencing the willingness of the recipient of the call to receive calls that deliver pre-recorded messages on behalf of a specific seller;

F.   Initiating any outbound telephone call that delivers a prerecorded message, other than a prerecorded message permitted for compliance with the call abandonment safe harbor in §310.4(b)(4)(iii) unless the requirements of §§ 310.4(b)(1)(v)(A) and 310.4(b)(1)(v)(B) are met;

G.   In the event that the Commission amends the Telemarketing Sales Rule, in whole or in part, Defendant shall comply fully and completely with all applicable provisions of the Amended Rule, on or after the date of any such amendment.

## IV. INJUNCTION AGAINST MISREPRESENTATIONS

**IT IS FURTHER ORDERED** that Defendant Maspakorn and her Representatives whether acting directly or through any other Person, corporation, partnership, subsidiary, division, agent or other device, in connection with the advertising, marketing, promotion, offering for sale, or sale of any good or service, are permanently restrained and enjoined from making or assisting others in the making of, expressly or by implication, any false or

misleading statement or representation of material fact, including but not limited to:

A.   The income a consumer can earn;

B.   The amount or type of resources or labor required to make money;

C.   Affiliation with, endorsement or approval by, or other connection to any other Person, business, government entity, or program;

D.   The total costs to purchase, receive, or use, and the quantity provided;

E.   Any material restriction, limitation, or condition to purchase, receive, or use;

F.   Any material aspect of the nature or terms of any refund, cancellation, exchange, or repurchase policy, including, but not limited to, the likelihood of a consumer obtaining a full or partial refund, or the circumstances in which a full or partial refund will be granted to the consumer; and

G.   Any material aspect of the performance, efficacy, nature or other characteristic.

**V.   INJUNCTION AGAINST USING OR MAINTAINING CONSUMER INFORMATION**

**IT IS FURTHER ORDERED** that Defendant Maspakorn and her Representatives whether acting directly or through any other Person, corporation, partnership, subsidiary, division, agent, or other device, are hereby permanently restrained and enjoined from:

A.   Selling, renting, leasing, transferring, or otherwise disclosing, using, or benefitting from consumer (including customers and prospective customers) information, including the name, address, telephone number, email address, social security number, place of

employment, financial need, other identifying information, or any data that enables access to a consumer's account (including a credit card, bank account, or other financial account) of any person that was obtained by any of the Defendants in connection with the marketing or sale of any product or service at any time prior to the date this Order was entered;

B.  Failing to dispose of such consumer (including customers and prospective customers) information in all forms in her possession, custody, or control within thirty (30) days after entry of this Order; and Disposal shall be by means that protect against unauthorized access to the customer information, such as by burning, pulverizing, or shredding any papers, and by erasing or destroying any electronic media, to ensure that the customer information cannot practically be read or reconstructed. ***Provided, however,*** that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by a law, regulation, or court order.

## VI. MONETARY RELIEF

The FTC seeks both disgorgement and civil penalties as remedies for the defendants violations of the FTC and Telemarketing Acts. As stated above, I find that the plaintiff has established violations of the acts, and thus remedies of injunctive relief and damages are appropriate. With respect to monetary relief, it is well settled that disgorgement is an appropriate remedy under the FTC Act. <u>FTC v. QT, Inc.</u>, 512 F.3d at 863. Moreover, it is undisputed that the FTC is empowered to recover civil penalties from a defendant who violates the TSR where the FTC has established that the defendant knowingly engaged in deceptive acts that

violated the TSR.  <u>See</u> 15 U.S.C. § 45(m)(1)(A).  In the instant case, plaintiff has established that the defendants knowingly engaged in deceptive acts, and knowingly violated the TSR by engaging in those acts.  Additionally, the FTC has established through the unrebutted evidence it has submitted that it is entitled to the amounts sought from the defendants for disgorgement and civil penalties.  Therefore:

**IT IS FURTHER ORDERED** that

A.  Judgment is hereby entered in favor of the Commission and against Defendant Maspakorn in the amount of $1,105,078.96 as disgorgement for unjust enrichment arising from violations of Section 5 of the FTC Act, 15 U.S.C. § 45, as alleged in Counts VI and VII of Plaintiff's Complaint.

B.  Judgment is hereby entered in favor of the Commission and against Defendant Maspakorn in the amount of $10,000,000 in civil penalties for violations of the Telemarketing Act, 15 U.S.C. § 6105, as alleged in Counts I-V of Plaintiff's Complaint.

C.  Within ten (10) business days after execution of this Order by Defendant Maspakorn, the Defendant will transfer funds in the amounts specified in Sections VI(A) and (B) of this Order to the court registry for the U.S. District Court for the Western District of New York or to the court-appointed receiver, where the funds will be held until the Court's entry of the Order, at which time all funds will be transferred to the FTC and the United States Treasury pursuant to Sections VI (E) and (F) of this Order.

D.  In the event of any default by Defendant Maspakorn in satisfying any of her obligations under this Order, the entire amount of the judgments, less any amounts previously paid

pursuant to this Order, together with interest, shall immediately become due and payable, and the Commission shall be entitled to pursue any and all other remedies available to it at law or equity. Further, interest, computed pursuant to 28 U.S.C. § 1961(a), shall accrue from the date of default to the date of payment. Defendant Maspakorn shall be liable for all payments required by this Order and any interest on such payments.

E.   All funds (or assets) paid pursuant to Section VI (A) of this Order shall be deposited into a fund administered by the Commission or its agents to be used for equitable relief, including, but not limited to, redress to consumers, and any attendant expenses for the administration of such equitable relief. In the event that redress to consumers is wholly or partially impracticable or funds remain after the redress is completed, the Commission may apply any remaining funds or assets for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendant Maspakorn's practices alleged in the Complaint. Any funds or assets not used for such equitable relief shall be deposited to the United States Treasury as disgorgement. Defendant Maspakorn shall have no right to challenge the Commission's choice of remedies under this Paragraph. Defendant Maspakorn shall have no right to contest the manner of distribution chosen by the Commission.

F.   All funds paid pursuant to Section VI (B) of this Order shall be deposited to the United States Treasury.

G.   Defendant Maspakorn relinquishes all dominion, control, and title to the funds paid to the fullest extent permitted by law. Defendant Maspakorn shall make no claim to or demand for return of the funds, directly or indirectly, through counsel or otherwise.

H.   In accordance with 31 U.S.C. § 7701, Defendant Maspakorn is hereby required, unless she has

done so already, to furnish to the Commission her taxpayer identifying number and/or social security number, which shall be used for the purposes of collecting and reporting on any delinquent amount arising out of Defendant Maspakorn's relationship with the government.

## VII. LIMITED LIFTING OF ASSET FREEZE

**IT IS FURTHER ORDERED** that the freeze of Defendants' assets set forth in the Preliminary Injunction Order [ECF #17] entered by this Court on July 21, 2009, shall be lifted to the extent necessary to turn over the Defendants' assets as required by Section VI of this Order, and upon completion of the turn-over, shall be lifted permanently.

## VIII. ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Defendant Maspakorn obtain acknowledgments of receipt of this Order:

A.  Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.  For 10 years after entry of this Order, Defendant, for any business that Defendant is the majority owner or directly or indirectly controls, must deliver a copy of this Order to:

(1)  all principals, officers, directors, and managers

(2)  all employees, agents, and representatives who participate in marketing, promoting, offering for sale,

selling, or promising any product through the Internet or by telemarketing means,

(3)   all payment processors, list brokers, and lead generators used by this business; and

(4)   any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within 7 days of entry of this Order for current personnel. To all others, delivery must occur before they assume their responsibilities.

C.   From each individual or entity to which Defendant delivered a copy of this Order, Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## IX. COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defendant make timely submissions to the Commission:

A.   180 days after entry of this Order, Defendant must submit a compliance report, sworn under penalty of perjury. The Defendant must:

(a)   identify all telephone numbers and all email, Internet, physical, and postal addresses, including all residences;

(b)   identify all titles and roles in all business activities, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and

(c)   describe in detail such Defendant's involvement in each such business, including title, role, responsibilities,

participation, authority, control, and any ownership;

(d) designate at least one telephone number and an email, physical, and postal address as points of contact, which representatives of the FTC may use to communicate with Defendant;

(e) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses;

(f) describe the activities of each business, including the products and services offered, the means of advertising, marketing, and sales, and the involvement of Defendant Paul Navestad, if any (which Defendant Maspakorn must describe if she knows or should know due to her own involvement)

(g) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (h) provide a copy of each Order Acknowledgment [and a copy of any bond] obtained pursuant to this Order, unless previously submitted to the Commission.

B. For 20 years following entry of this Order, Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1. Defendant must report any change in:

(a) name, including aliases or fictitious name, or residence address; or

(b) title or role in any business activity, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership

interest, and identify its name, physical address, and Internet address, if any;

(c)  any designated point of contact; or

(d)  any entity that Defendant has any ownership interest in or directly or indirectly controls that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

C.  Defendant must submit to the FTC notice of the filing of any bankruptcy petition, insolvency proceeding, or any similar proceeding by or against Defendant within 14 days of its filing.

D.  Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 18 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on:_____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.  Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: FTC v. Chintana Maspakorn.

**X. RECORD KEEPING**

IT IS FURTHER ORDERED that Defendant must create certain records for 20 years after entry of the Order, and to retain each such record for 5 years. Specifically, for any business in which Defendant, individually or collectively with Defendant Chintana Maspakorn, is a majority owner or directly or indirectly controls, Defendant must maintain the following records:

A.   Accounting records showing the revenues from all goods or services (including charitable or fund raising donations of any kind) sold, all costs incurred in generating those revenues, and the resulting net profit or loss;

B.   Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name, addresses, and telephone numbers; job title or position; dates of service; and, if applicable, the reason for termination;

C.   Customer files obtained after entry of this Order showing the names, addresses, telephone numbers, dollar amounts paid, and the quantity and description of goods or services purchased or donations provided;

D.   Complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

E.   All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission;

F.   A copy of all advertisements, sales scripts, training materials, or other marketing materials, including, but not limited to, mailers, brochures, websites, flyers, and postcards; and

G.   A copy of all contracts with suppliers, payment processors, list brokers, and lead generators.

## XI. COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendant's compliance with this Order, including any failure to transfer any assets as required by this Order:

A.   Within 14 days of receipt of a written request from a representative of the FTC, Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents, for inspection and copying. The FTC is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.   For matters concerning this Order, the FTC is authorized to communicate directly with the Defendant. Defendant must permit representatives of the FTC to interview any employee or other person affiliated with the Defendant who has agreed to such an interview. The person interviewed may haven counsel present.

C.   The FTC may use all other lawful means, including posing, through its representatives, as consumers, suppliers, or other individuals or entities, to Defendant or any individual or entity affiliated with the Defendant, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

## XII. RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca
_____
MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          March 23, 2012